**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALI ADER,<br><br>　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>NGM BIOPHARMACEUTICALS, INC., WILLIAM J. RIEFLIN, DAVID V. GOEDDEL, SHELLY GUYER, CAROLE HO, SUZANNE SAWOCHKA HOOPER, ROGER M. PERLMUTTER, and DAVID J. WOODHOUSE,<br><br>　　　　　　　Defendants. | Case No.: 3:24-cv-1759<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Ali Ader ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against NGM Biopharmaceuticals, Inc. ("NGM" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of

- 1 -
COMPLAINT

Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Atlas Neon Parent, Inc. ("Parent") through a wholly owned subsidiary, Atlas Neon Merger Sub, Inc. ("Merger Sub,") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2. Parent and Merger Sub are affiliates of The Column Group, LP (together with Parent and Merger Sub "TCG").

3. The terms of the Proposed Transaction were memorialized in a February 12, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, TCG will acquire all outstanding shares of NGM common stock for $1.55 per share in cash. As recently as February 23, 2024, NGM common stock was trading at $1.91 per share.

4. Thereafter, on March 8, 2024, NGM filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

5. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.

6. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for NGM, provided by NGM to the Company Board Special Committee's (the "Special Committee") financial advisors Guggenheim Securities, LLC ("Guggenheim"); and (c) the data and inputs underlying the financial valuation analyses, that purport to support the fairness opinion by Guggenheim, and provided to the Company, Special Committee, and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of Illinois and is a NGM stockholder.

9. Defendant NGM, a biopharmaceutical company, engages in the discovery and development of novel therapeutics to treat liver and metabolic diseases, retinal diseases, and cancer. The Company is incorporated in the State of Delaware, has its principal executive offices located at 333 Oyster Point Boulevard, South San Francisco, CA 94080 and its shares trade on the Nasdaq Capital Market under the ticker symbol "NGM."

10. Defendant William J. Rieflin ("Rieflin") has been Chairman of the Company Board at all relevant times. In addition Rieflin entered into a rollover agreement with TCG (the "Rollover Agreement") wherein it was agreed, among other things, that Parent will issue common shares of Parent, as applicable, in accordance with the terms of the applicable Rollover Agreement.

11. Defendant David V. Goeddel ("Goeddel") has been a Director of the Company at all relevant times. Additionally, Goeddel is a managing partner at TCG and also entered into the Rollover Agreement.

12. Defendant Shelly Guyer ("Guyer") has been a Director of the Company at all relevant times.

13. Defendant Carole Ho ("Ho") has been a director of the Company at all relevant times.

14. Defendant Suzanne Sawochka Hooper ("Sawochka Hooper") has been a Director of the Company at all relevant times.

15. Defendant Roger M. Perlmutter ("Perlmutter") has been a director of the Company at all relevant times.

16. Defendant David J. Woodhouse ("Woodhouse") has been a director of the Company at all relevant times. Defendant Woodhouse also serves as the Company's Chief

Executive Officer ("CEO"). In addition, Woodhouse entered into the Rollover Agreement with TCG.

17. Defendants identified in ¶¶ 10-16 are collectively referred to as the "Individual Defendants."

18. Non-Party Parent is an affiliate of The Column Group, LP.

19. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. NGM, a biopharmaceutical company, engages in the discovery and development of novel therapeutics to treat liver and metabolic diseases, retinal diseases, and cancer.

24.     Pursuant to the Company Management Projections, the Company's cash balance as of January 4, 2024, is $143.5 million. Moreover, the Company has advised its cash balance is expected to fund business operations into mid-2025.

25.     The Proposed Transaction's is valued at approximately $135 million, roughly $10 million less than the Company's expected cash balance at the time of closing. As a result, TCG, of which Defendant Goeddel is the managing partner, as well as the holder of over 26% of the Company's outstanding shares, is essentially receiving the Company's entire portfolio for free, while paying the Plaintiff and the other Company shareholders $1.55 a share out of the Company's own coffers.

26.     In a January 9, 2024, press release announcing its new clinical date from the ongoing NGM707 Clinical Trials, the Company highlighted the following: encouraging new findings from the Phase 1 Part 1b dose escalation cohort of the ongoing Phase 1/2 trial evaluating NGM707 in combination with pembrolizumab for the treatment of patients with advanced or metastatic solid tumors. The combination of NGM707 and pembrolizumab was generally well tolerated at all four dose levels of NGM707.

27.     Defendant CEO Woodhouse, who has entered into a Stockholder Rollover Agreement and will receive shares of Parent as a result of the merger, highlighted these findings, "Our focus on the combination of NGM707 and pembrolizumab stems from encouraging responses observed in heavily pretreated patients with very advanced disease, including MSS CRC, that has been largely unresponsive to anti-PD-1/L1 monotherapy."

28.     In a January 9, 2024 press release, the Company highlighted the status of the clinical trials of NGM707, yet while the Recommendation Statement references the press release, it fails to even mention NGM707.

29.     Despite the favorable and positive announcements, a mere four weeks later, the Individual Defendants caused NGM to enter into the Proposed Transaction, all without providing the requisite information to the Company's public stockholders such as Plaintiff.

*The Proposed Transaction*

30. On February 26, 2024, NGM and TCG issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN FRANCISCO, Feb. 26, 2024 (GLOBE NEWSWIRE) -- NGM Biopharmaceuticals, Inc. ("NGM Bio") (Nasdaq: NGM), a biotechnology company focused on discovering and developing transformative therapeutics for patients, today announced that it has entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") under which Atlas Neon Parent, Inc. ("Purchaser") and Atlas Neon Merger Sub, Inc. ("Merger Sub") will acquire NGM Bio through a cash tender offer to be commenced by Merger Sub for all outstanding shares of NGM Bio not held by affiliates of The Column Group, LP and certain other stockholders, as described below, at a price per share of $1.55 in cash. Purchaser and Merger Sub are affiliates of The Column Group, LP (together with certain of The Column Group, LP's affiliates, the "TCG Stockholders"), NGM Bio's longest and largest stockholder, holding approximately 26% of NGM Bio's outstanding shares.
>
> The TCG Stockholders and certain other existing stockholders of NGM Bio (the "Rollover Stockholders") have agreed to contribute their shares of NGM Bio stock to Purchaser as a part of the transaction rather than receive the cash price per share. This price per share corresponds to a total equity value of $135 million on a fully diluted basis and represents an 80% premium over the last trading day closing price (December 29, 2023) prior to NGM Bio's Form 8-K confirming receipt from the TCG Stockholders of a non-binding expression of interest in exploring and evaluating a potential acquisition of all of the outstanding shares of common stock of NGM Bio not already owned by the TCG Stockholders in a going-private transaction. NGM Bio's cash, cash equivalents and short-term marketable securities were $166.0 million as of September 30, 2023 and an estimated $144.2 million as of December 31, 2023.
>
> Following a thorough exploration and review of strategic and financial alternatives with the assistance of its legal and financial advisors, a Special Committee of the NGM Bio Board of Directors (the "Special Committee"), consisting solely of independent and disinterested members of the NGM Bio Board of Directors (the "Board"), determined that the acquisition by Purchaser is in the best interests of NGM Bio stockholders (excluding the TCG Stockholders, Purchaser, Merger Sub, the Rollover Stockholders, the members of the Board and the officers of NGM Bio subject to Section 16 of the Exchange Act, referred to as the "Unaffiliated Stockholders"), and unanimously recommended approval of the Merger Agreement to the Board. The Special Committee and NGM Bio management team explored a range of strategic options, including engaging with multiple potential third party acquirors, before negotiating and entering into the Merger Agreement.

> "We conducted a thorough review of our financial and strategic alternatives, including remaining a publicly held company, with particular focus on NGM Bio's ongoing need for significant additional funding. Based on this review, we believe that this negotiated transaction for Purchaser to acquire NGM Bio is in the best interest of the Unaffiliated Stockholders," said Suzanne Sawochka Hooper, an independent member of the Board and Chair of the Special Committee.
>
> Based upon the recommendation of the Special Committee, with the assistance of its legal and financial advisors, the Board determined that the acquisition by Purchaser is in the best interests of the Unaffiliated Stockholders, and approved the Merger Agreement.
>
> Closing of the tender offer is subject to the satisfaction of certain customary conditions, including the tender of NGM Bio shares representing at least a majority of the total number of outstanding shares held by the Unaffiliated Stockholders. The tender offer is not subject to a financing contingency.
>
> Promptly following the closing of the tender offer, Merger Sub will merge with and into NGM Bio, and all remaining shares not tendered in the offer, other than dissenting shares, treasury shares and rollover shares held by the TCG Stockholders, Purchaser and any other subsidiary of Purchaser, or the Rollover Stockholders, will be converted into the right to receive a price per share of $1.55 in cash. The acquisition is expected to close in the second quarter of 2024. If completed, the transaction will result in NGM Bio becoming a privately held company and its shares will no longer be listed on Nasdaq.

***The Materially Misleading and/or Incomplete Recommendation Statement***

31. On March 8, 2024, the NGM Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

32. The Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including TCG), if any, differed from one another, and if so, in what way; and

    b. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including TCG, would fall away.

*Omissions and/or Material Misrepresentations Concerning NGM's Financial Projections*

33. The Recommendation Statement fails to provide material information concerning financial projections for NGM provided by NGM management and relied upon by Guggenheim in its analyses.

34. Notably, in its fairness opinion, Guggenheim indicates that it reviewed, "certain non-public business and financial information regarding the Company's business, products, product candidates, intellectual property and future prospects (including certain probability-adjusted financial projections for the Company on a stand-alone basis for the years ending December 31, 2024 through December 31, 2044 (the "Company-Provided Financial Projections") and certain other estimates and other forward-looking information), all as prepared by, discussed with and approved for Guggenheim Securities' use by the Company's senior management (collectively, the "Company-Provided Information")."

35. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that NGM management provided to the Board and Guggenheim. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

36. With regard to *Probability-Adjusted Projections*, the Recommendation Statement fails to disclose material line items, including the following:

   a. Total Net Revenue including the underlying inputs, metrics, and assumptions used to determine same;

   b. Gross Profit including the underlying inputs, metrics, and assumptions used to determine same;

   c. Operating Expenses including the underlying inputs, metrics, and assumptions used to determine same;

   d. Operating Profit (Loss) including the underlying inputs, metrics, and assumptions used to determine same; and

   e. Free Cash Flow (Probability – Adjusted) including the underlying inputs, metrics, and assumptions used to determine the same, including specifically: operating profit, depreciation and amortization, capital expenditures, and changes in net working capital.

37. This information is necessary to provide Plaintiff in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

38. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Guggenheim's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Guggenheim*

39. In the Recommendation Statement, Guggenheim describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail

to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

40. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific inputs, metrics, and assumptions used to determine the discount rates ranging from 15.50% to 17.75% utilized;

   b. The Company's weighted average cost of capital utilized, and the specific inputs and metrics used to determine the same;

   c. The Company's terminal/ continuing value utilized, and the specific metrics, inputs, and assumptions used to determine the same;

   d. The specific inputs, metrics, and assumptions used to determine the Company's perpetuity growth rate of (3)% utilized; and

   e. The number of fully diluted outstanding shares of Company Common Stock, Company Options, and Company RSUs as of February 22, 2024, utilized.

41. With respect to the *Premia Paid in Select Recent Biotech Minority Squeeze Out Transactions*, the Recommendation Statement fails to disclose the underlying inputs, metrics, and assumptions used to determine the applied 25th to 75th percentile premia range of 39% to 65% utilized.

42. With respect to the *Premia Paid in Select Recent Biotech M&A Transactions*, the Recommendation Statement fails to disclose the underlying inputs, metrics, and assumptions used to determine the applied 25th to 75th percentile premia range of 47% to 87% utilized.

43. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

44. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

45. Plaintiff repeats all previous allegations as if set forth in full herein.

46. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

47. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

48. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

49. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

50. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

51. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

52. Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

53. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

54. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

55. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

56. SEC Rule 14d-9 requires a Company's directors to furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

57. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

58. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

59. Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

60. Plaintiff repeats all previous allegations as if set forth in full herein.

61. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

62. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of NGM's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

64. The Individual Defendants acted as controlling persons of NGM within the meaning of Section 20(a) of the Exchange Act. Because of their position with the Company, the Individual Defendants had the power and authority to cause NGM to engage in the wrongful conduct complained of herein. The Individual Defendants controlled NGM and all of its employees. As alleged above, NGM is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 21, 2024          **BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*